UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                           **DECISION AND ORDER**
                                                     17-CR-193S

BRETT SCHULTZ,

                    Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Brett Schultz's Motion for Release or Sentence Reduction under the federal compassionate-release statute (Docket No. 35), which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). Because Schultz has failed to satisfy the mandatory exhaustion provisions of the statute, his motion is denied without prejudice.

## II. BACKGROUND

On November 8, 2017, Schultz waived indictment and pleaded guilty to a single-count information charging him with attempted receipt of child pornography in violation of 18 U.S.C. § 2252A (a)(2)(A). (Docket Nos. 16-18, 20.) This charge stemmed from Shultz's sexually explicit on-line chats with an undercover law enforcement officer whom he believed to be a minor female. Shultz sent this "girl" naked photographs of himself, requested that she reciprocate with explicit photographs and videos of her own, and coached her on how to perform sex acts. After a period of communication, Shultz arranged to meet this "girl" in person for the purposes of engaging in sexual activity with her and arrived at the meeting point with a condom in his pocket.

1

On March 7, 2018, this Court sentenced Schultz to 87 months' imprisonment pursuant to the terms of the parties' Rule 11 (c)(1)(C) plea agreement, 10 years' supervised release, a $100 special assessment, and no fine or restitution. (Docket Nos. 18, 32, 33.) He is presently serving his sentence at FCI Elkton, with a release date of May 17, 2023. See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited April 14, 2020).

On April 7, 2020, Schultz moved for release to home incarceration or for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A) on the ground that he is at heighted risk to develop COVID-19 given his asthma condition and the recent outbreak of the coronavirus at FCI Elkton. (Docket No. 37.) Shultz also claims to have applied to the Bureau of Prisons for release on April 7, 2020, but no proof of that request has been provided. (Docket No. 38, p. 2.) The government opposes Schultz's motion. (Docket No. 37.)

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)**

As amended by the First Step Act of 2018,[1] 18 U.S.C. § 3582 (c)(1)(A)(i) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

---

[1] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) (same).

> or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce his or her sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)). The exhaustion requirement is met if the defendant establishes either (1) that the Bureau of Prisons denied his or her request that it bring a compassionate-release motion and he or she fully exhausted all

3

administrative appeal rights with respect to that denial, or (2) that the warden of the facility took no action on his or her request for the filing of a compassionate-release motion within 30 days of receiving it.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction:  "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or

4

> > mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described." Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision.  It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g), and (3) the reduction is consistent with the U.S.S.G. § 1B1.13 policy statement.  See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  See Gileno, 2020 WL 1307108, at *2.

**B.    Shultz's Motion for Compassionate Release**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  Conceding that he has not met this requirement, Schulz argues that this Court can and should excuse this failure given the extraordinary pandemic engulfing the nation.  In opposition, the government argues that the exhaustion requirement is mandatory and must be enforced, even in the face of an extraordinary crisis.  Mindful that courts have recently come down on both sides of this issue, this Court's examination of

5

§ 3582 (c)(1)(A) leads it to conclude that the exhaustion requirement is mandatory and must be enforced.

Statutory interpretation begins with examination of the statutory text, which is read with the understanding that the ordinary meaning of the language accurately expresses the legislative purpose. See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009). Plain and unambiguous statutory language is enforced according to its terms. See Hardt, 560 U.S. at 251 (citing Carcieri v. Salazar, 555 U.S. 379, 387, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009) and Jimenez v. Quarterman, 555 U.S. 113, 118, 129 S. Ct. 681, 172 L. Ed. 2d 475 (2009)).

As relevant here, 18 U.S.C. § 3582 (c)(1)(A) provides:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, barring a motion by the Director of the Bureau of Prisons, the statute authorizes a court to modify a previously-imposed term of imprisonment for extraordinary and compelling reasons only if the defendant first presents his or her request for a

6

sentence reduction to the Bureau of Prisons and either (1) the Bureau of Prisons denies the request and the defendant exhausts all administrative rights with respect to that denial, or (2) the warden of the facility takes no action on the request within 30 days of receiving it.  See 18 U.S.C. § 3582 (c)(1)(A) (emphasis added).

This is a plain exhaustion mandate containing no built-in textual exceptions, other than the 30-day lapse provision.  Cf. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d (2016) (finding a textual exception in the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e (a), which requires exhaustion of only "such administrative remedies *as are available*") (emphasis added).  That is, § 3582 (c)(1)(A) unambiguously conditions a court's authority to modify a previously-imposed sentence on satisfaction of its exhaustion provisions.  See United States v. Fana, 1:19-cr-11-GHW, 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020) ("The language of this provision ("[t]he court may not") expressly prohibits the Court from granting relief unless the statutory preconditions are satisfied.").

As a *statutory* exhaustion provision—one imposed by Congress—§ 3582 (c)(1)(A)'s exhaustion requirement is not subject to judge-made exceptions, as *judge-made* exhaustion requirements may be.  See Ross, 136 S. Ct. at 1856-57.  As the Supreme Court explains:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on different footing.  There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion. Time and again, this Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous

7

>textual requirements.

Id. (citations omitted).

Consequently, because Congress did not write any exceptions into § 3582 (c)(1)(A)'s exhaustion provisions (other than the 30-day lapse provision), those provisions must be strictly enforced and are not subject to judge-made exceptions. See Theodoropoulos, 358 F.3d at 172 ("As a general rule, courts are required to strictly enforce statutory exhaustion requirements."); Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them.").

Other district courts in this circuit agree. See, e.g., United States v. Engleson, No. 13-cr-340-3 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (Sullivan, Circuit Judge, sitting by designation) (finding that the court could not grant relief under § 3582 (c)(1)(A) where the statutory exhaustion requirement is not met); United States v. Rensing, 16 CR 442 (VM), 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020) (finding exhaustion required); Fana, 2020 WL 1816193, at *5 ("Congress's intent is best discerned from the text of the statute that it passed, and [§ 3582 (c)(1)(A)] prohibits the Court from acting except upon satisfaction of the [exhaustion] conditions laid out in it."); United States v. Gentille, 19 Cr. 590 (KPF), 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) (citing cases and finding that "courts lack the authority to waive the administrative exhaustion requirement stated in § 3582 (c)(1)(A)"); United States v. Roberts, 18-CR-528-5 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) ("Under Ross, the Court must abide by Congress's choice, given Section 3582 (c)'s clear command that the Court "may not" grant compassionate release except under the conditions Congress prescribed."); United

States v. Woodson, 18-cr-845 (PKC), 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020) (finding § 3582 (c)(1)(A) "free from ambiguity" and rejecting argument that the exhaustion requirement can be dispensed with in light of the COVID-19 crisis); United States v. Gross, 15-cr-769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) (requiring exhaustion and finding the case for carving out an equitable exception to be "weak").

The Third Circuit also agrees, having just found that "strict compliance with § 3582 (c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" during the existing COVID-19 crisis.  United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (describing the failure to exhaust as a "glaring roadblock foreclosing compassionate release at this point").

Schultz, of course, relies on those courts that have reached the opposite conclusion.  See, e.g., United States v. Bin Wen, 6:17-CR-06173 EAW, 2020 WL 1845104, at *4-*7 (W.D.N.Y. Apr. 13, 2020); United States v. Haney, 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020); United States v. Sawicz, 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020); Perez, 2020 WL 1546422, at *2-*3; United States v. Colvin, Criminal No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020).

Several of these decisions fail to recognize the "different footing" between statutorily-required and judge-made exhaustion provisions, see Ross, 136 S. Ct. at 1856-57, and some erroneously rely on Washington v. Barr, as Shultz does, where a panel of the Second Circuit stated in dicta that "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute."  925 F.3d 109, 118 (2d Cir. 2019).   As explained in Woodson, however, Barr was not a statutorily-mandated

9

exhaustion case. See id.  The panel's statement came in the context of it examining a *judge-made* exhaustion provision and in exploring exceptions to *judge-made* exhaustion provisions set out by the Supreme Court in McCarthy v. Madigan.  503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992).  The panel's statement was therefore not necessary to its holding and appears to be in conflict with the law governing statutorily-mandated exhaustion provisions set forth above.  This Court therefore considers Barr neither controlling nor instructive.

Consequently, this court joins those courts finding that the statutorily-mandated exhaustion requirements in § 3582 (c)(1)(A) cannot be excused and instead "must be strictly enforced." Monzon, 2020 WL 550220, at *2 (citing Theodoropoulos, 358 F.3d at 172).  As difficult as this result may be in the midst of the COVID-19 pandemic, this is the statutory scheme that Congress developed for modification of imposed terms of imprisonment.[2]  Indeed, Congress already accounted for a common exception to exhaustion—futility—by implementing the 30-day lapse provision, thereby affording inmates access to judicial review if the Bureau of Prisons fails to act on motions to reduce sentence within 30 days of receiving them.  See Gross, 2020 WL 1673244, at *2 ("Not only does the First Step Act explicitly circumscribe judicial review, requiring a defendant to first *fully* exhaust *all* administrative rights, but it also provides a built-in futility exception in the form of the 30-day rule." (emphasis in original)); Roberts, 2020 WL 1700032, at *2 (finding the 30-day lapse provision to be "a limited futility-like exception").  Nothing in the statute suggests that Congress intended any further judge-made exceptions to

---

[2] This Court notes that Congress passed legislation in specific response to the COVID-19 outbreak, but did not change the § 3582 (c)(1)(A) statutory scheme, which it could have elected to do. See Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136 (2020).

supplement this scheme.  See Fana, 2020 WL 1816193, at *5 ("Congress' intent is best discerned from the text of the statute that it passed, and [§ 3582 (c)(1)(A)] prohibits the Court from acting except upon satisfaction of the conditions laid out in it.").

It is thus plain that Congress intended the Bureau of Prisons to receive all requests for sentence modification and to have at least 30 days to act on them before those requests are presented to the federal courts.[3]  In the absence of statutory exceptions to those requirements, this Court must strictly enforce them.  See Theodoropoulos, 358 F.3d at 172; Roberts, 2020 WL 1700032, at *2 ("Given Congress's decision to mandate exhaustion and to specify a single alternative, the Court is not free to infer a general "unwritten 'special circumstances' exception." (quoting Ross, 136 S. Ct. at 1856, 1862)).  Accordingly, because Shultz failed to exhaust his administrative rights as statutorily required, his motion must be denied without prejudice.

## IV. CONCLUSION

Because Schultz failed to exhaust his administrative rights as statutorily required under 18 U.S.C. § 3592 (c)(1)(A), his motion for release or reduction of sentence will be denied without prejudice.

---

[3] As the Woodson court noted, there may be good reason for this scheme:

> Giving the BOP the opportunity to speak first may obviate the need for judicial action where a defendant's application is granted.  If the BOP denies a defendant's application, the BOP's decision may inform the Court of why the agency does not consider the relief warranted.  The present national health emergency makes thoughtful and considered input from the BOP all the more valuable in avoiding unwarranted disparities among convicted defendants.

2020 WL 1673253, at *3.

11

## V. ORDER

IT HEREBY IS ORDERED, that Shultz's Motion for Release or Sentence Reduction (Docket No. 35) is DENIED without prejudice.

SO ORDERED.

Dated:     April 15, 2020
           Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge