UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**
17-CR-193S

BRETT SCHULTZ,

                 Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Brett Schultz's Motion for Sentence Reduction under the federal compassionate-release statute, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Schultz's motion is denied.

## II. BACKGROUND

On November 8, 2017, Schultz waived indictment and pleaded guilty to a single-count information charging him with attempted receipt of child pornography in violation of 18 U.S.C. § 2252A (a)(2)(A). (Docket Nos. 16-18, 20.) This charge stemmed from Schultz's sexually explicit on-line chats with an undercover law enforcement officer whom he believed to be a minor female. Schultz sent this "girl" naked photographs of himself, requested that she reciprocate with explicit photographs and videos of her own, and coached her on how to perform sex acts. Schultz then arranged to meet this "girl" for sex and arrived at the meeting point with a condom in his pocket.

On March 7, 2018, this Court sentenced Schultz to 87 months' imprisonment pursuant to the terms of the parties' Rule 11 (c)(1)(C) plea agreement, 10 years' supervised release, a $100 special assessment, and no fine or restitution. (Docket Nos.

1

18, 32, 33.)  He is presently serving his sentence at FCI Elkton, with a release date of May 17, 2023.[1]

On April 7, 2020, Schultz moved for release to home incarceration or for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A) on the ground that he is at heighted risk to develop COVID-19 given his asthma condition and the recent outbreak of the coronavirus at FCI Elkton.  (Docket No. 35, 38.)  The government opposed Schultz's motion.  (Docket No. 37.)

On April 15, 2020, this Court denied Schultz's motion without prejudice for failure to exhaust his administrative rights as required under § 3582 (c)(1)(A).  See United States v. Schultz, 17-CR-193S, 2020 WL 1872352 (W.D.N.Y. Apr. 15, 2020).[2]  This Court thereafter also denied Schultz's motion for reconsideration.  (Docket No. 44.)

Upon exhaustion, Schultz filed the instant motion to reduce sentence on May 13, 2020.  (Docket Nos. 45, 48, 49.)  The government again opposes the motion.  (Docket No. 47.)  At Schultz's request, this Court has considered the previous submissions (Docket Nos. 35, 37, 38, 40, 41, 43) along with the current ones in resolving the present motion.

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020).  One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as

---

[1] See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited May 26, 2020).

[2] This decision is filed at Docket No. 39.

amended by the First Step Act of 2018,[3] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18

---

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) (same).

U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [4] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i). See 28 U.S.C. § 994 (t). The Commission, in turn,

---

[4] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel. Id. § 542.15 (a). A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction:  "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an

extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[5] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 2020 WL 1307108, at *2.

---

[5] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A). See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited May 13, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the "Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction. See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

**B.      Schultz's Motion for Sentence Reduction**

Schultz has served 38 months of his 87-month sentence.  He is 42 years old and has suffered from asthma since childhood, which he claims makes him highly susceptible to COVID-19.  (Presentence Report, Docket No. 25, ¶ 77.)  Based on these circumstances, Schultz requests that this Court reduce his sentence to time served or permit him to serve the remainder of his sentence in home confinement.  If granted, Schultz plans to live alone in his single-family residence.  (Affirmation of Fonda Dawn Kubiak ("Kubiak Aff."), Docket No. 45, ¶ 23.)  The government asks that Schultz's motion be denied.

**1.  Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; Schultz, 2020 WL 1872352, at *3-6; see also United States v. Montanez, 15-CR-122-FPG, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement

7

mandatory).

Section 3582 (c)(1)(A) unambiguously conditions a court's authority to modify a previously imposed sentence on satisfaction of its exhaustion provisions. See United States v. Vence-Small, No. 3:18-cr-00031 (JAM), 2020 WL 1921590, at *3 (D. Conn. Apr. 20, 2020) ("Importantly, however, Congress conditioned the right of a defendant to file a motion for sentence reduction upon the defendant's first applying to the prison warden to file a motion on the defendant's behalf."); United States v. Fana, 1:19-cr-11-GHW, 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020) ("The language of this provision ("[t]he court may not") expressly prohibits the Court from granting relief unless the statutory preconditions are satisfied."). As a *statutory* exhaustion provision—one imposed by Congress—§ 3582 (c)(1)(A)'s exhaustion requirement is not subject to judge-made exceptions, as *judge-made* exhaustion requirements may be. See Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856-57, 195 L. Ed. 2d 117 (2016); see also Vence-Small, 2020 WL 1921590, at *4 (explaining that Ross "made clear that judges are not at liberty to add judge-made exceptions to exhaustion requirements that are made mandatory by statute"). As the Ross court explained:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion. Time and again, this Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements.

Id. (citations omitted); see also McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Of 'paramount importance' to any exhaustion inquiry is

8

congressional intent. Where Congress specifically mandates, exhaustion is required." (citations omitted)).

Consequently, because Congress did not write any exceptions into § 3582 (c)(1)(A)'s exhaustion provisions (other than the 30-day lapse provision), those plain and unambiguous provisions must be strictly enforced and are not subject to judge-made exceptions. See Theodoropoulos, 358 F.3d at 172 ("As a general rule, courts are required to strictly enforce statutory exhaustion requirements."); Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them."); United States v. DeMaria, 17 Cr. 569 (ER), 2020 WL 1888910, at *3 (S.D.N.Y. Apr. 16, 2020) ("The plain language of [§ 3582 (c)(1)(A)] does not give this Court any flexibility in allowing waiver.").

Here, Schultz submitted his request for a sentence modification to the warden of FCI Elkton on April 7, 2020. (Kubiak Aff., ¶ 4.) Schultz's attorney followed up with a letter seeking the same relief on April 17, 2020, and the warden denied both requests on April 23 and 24, 2020. (Id. ¶¶ 5, 6.) Schultz appealed the warden's decision in filings dated May 5, 2020. (Id. ¶ 7.) Thirty days having lapsed since April 7, 2020, this Court finds that Schultz has satisfied the statutory exhaustion requirement, and the government does not contend otherwise.

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Schultz is a 42-year-old man with asthma. He represents through his lawyer that he is a severe asthmatic who requires daily prednisone and daily use of an emergency albuterol inhaler. (Affirmation of Fonda Dawn Kubiak, Docket No. 35, ¶¶ 3, 24, 27.) The Presentence Report from January 22, 2018, simply states that "as a child, [Schultz] was

9

diagnosed with asthma and has used an inhaler since that time." (Presentence Report, ¶ 77.) While no medical records have been submitted, FCI Elkton has identified Schultz as medically vulnerable to COVID-19 due to his asthma. (Kubiak Aff., ¶ 11 and Exhibit E.)

Even assuming that Schultz's asthma is as severe a condition as he says it is, it does not constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13. The condition is not a terminal illness (i.e., a serious and advanced illness with an end of life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor is it a serious condition, impairment, or age-related deterioration that substantially diminishes his ability to provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii). See United States v. Korn, 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Schultz argues that his medical conditions make him highly susceptible to contracting and dying from COVID-19. See United States v. Resnick, 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).

Again assuming that Schultz's asthma is as severe as he says it is, the condition does in fact make him generally more susceptible to COVID-19. COVID-19, of course, is the sweeping, potentially deadly, worldwide pandemic that required the President of the

United States to declare a national emergency on March 13, 2020.  The Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[6]  Those medical conditions include moderate to severe asthma.[7] Schultz therefore falls into the high-risk category.

The Bureau of Prisons, however, has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19.  Preparations began in January 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[8]  This plan is based on guidance and directives from the World Health Organization, the Centers for Disease Control and Prevention, and other related agencies.  Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, limited group gatherings, employed screening procedures, and suspended visitation and tours.  These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population.

While indications are that adherence to this plan has generally served Bureau of Prisons facilities fairly well, there have been difficult-to-control "hotspots."  FCI Elkton is one of them.  Little more than one month ago, Attorney General Barr found that "significant

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 26, 2020).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 26, 2020).

[8] See https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited May 26, 2020).

levels of infection" at FCI Elkton were materially affecting its operations.[9] He therefore ordered the Director of the Bureau of Prisons "to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of [Elkton]."[10] Federal district courts have also acknowledged the difficult conditions at FCI Elkton. See, e.g., United States v. McIndoo, 1:15-CR-142 EAW, 2020 WL 2201970, at * (W.D.N.Y. May 6, 2020) (describing conditions at FCI Elkton as "dire"); Montanez, 2020 WL 2183093, at *1 (describing FCI Elkton as "particularly hard it by COVID-19"). In addition, the conditions at FCI Elkton are presently being litigated in a class action suit brought by inmates. See Wilson v. Williams, Case No. 4:20-cv-794, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020) (finding that Elkton officials are "fight[ing] a losing battle"). As of May 25, 2020, the Bureau of Prisons reports that 162 inmates at FCI Elkton are positive for COVID-19, 7 staff are positive, and nine inmates have died.[11] Overall, there have been 235 inmate and 53 staff cases at FCI Elkton.[12]

Given the above, this Court finds that Schultz falls into the high-risk category for COVID-19. Some courts find this alone enough to warrant a sentence reduction. See, e.g., United States v. Zukerman, 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases finding that compassionate release is justified for individuals with risk factors that make them particularly susceptible to COVID-19). But this Court does not adhere to that view. Rather, this Court has found, and continues to find, that the mere *possibility* of contracting a communicable disease such as COVID-19, without

---

[9] See https://www.justice.gov/file/1266661/download (last visited May 26, 2020).

[10] See https://www.justice.gov/file/1266661/download (last visited May 26, 2020).

[11] See https://www.bop.gov/coronavirus (last visited May 26, 2020).

[12] See https://www.bop.gov/coronavirus (last visited May 26, 2020).

any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme. See Korn, 2020 WL 1808213, at *6; see also United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gagne, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 2020 WL 1307108, at *4 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

Here, however, Schultz demonstrates more than just the possibility that he could

contract COVID-19. He demonstrates a high-risk factor (asthma) coupled with incarceration in a proven hotbed facility that has seen hundreds of positive cases and multiple inmate deaths. He further demonstrates that the BOP has thus far been unable to effectively manage or guard against the virus at FCI Elkton, which places him at increased risk. Accordingly, this Court finds that Schultz has demonstrated extraordinary and compelling reasons warranting a sentence reduction. This finding alone, however, does not necessarily compel release. See McIndoo, 2020 WL 2201970, at *5 (commenting that release does not "automatically ensue[ ] in the face of a prison's difficulties in stopping the spread of COVID-19").

### 3. Consideration of the § 3553 (a) Factors

Despite having found extraordinary and compelling reasons for a sentence reduction, this Court finds that those reasons are outweighed by consideration of the § 3553 (a) factors and that a sentence reduction would undermine Schultz's original sentence. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 2020 WL 91399, at *7. The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a).

Schultz's offense conduct is abhorrent. He preyed on a "girl" whom he solicited online and thought was a 15-year-old high school student. He sent this "girl" numerous sexually explicit messages, describing in great detail the sex acts he would perform on

14

her and that she should perform on him. When this "girl" confessed inexperience, Schultz coached her on how to masturbate and perform sex acts; encouraged her to ask her friends to teach her how to have sex; and instructed her to watch pornographic videos. Schultz sent this "girl" multiple pictures of his exposed genitalia and coaxed her to reciprocate. And throughout the encounter, Schultz instructed this "girl" to keep their communication hidden from her parents and repeatedly sought assurances that they would not get caught. Finally, after again and again asking this "girl" to meet him for sex, Schultz arranged to pick her up to "practice in his van," and he arrived at the meeting point prepared with a condom.

For this disturbing and egregious conduct, Schultz agreed to the imposition of an 87-month term of imprisonment. That is a fair, just, and reasonable sentence which, in this Court's view, would be severely undermined by a reduction to time served after only 38 months. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction would also result in unwarranted sentencing disparities. Id. Accordingly, consideration of the § 3553 (a) factors strongly counsels against reducing Schultz's sentence.

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Lastly, a sentence reduction must be consistent with U.S.S.G. § 1B1.13, which having already found extraordinary and compelling circumstances, essentially means that this Court must determine whether Schultz is a danger to the safety of any person or to the community. See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction

be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2).

Schultz argues that he is not a danger to anyone because he has had no disciplinary issues while incarcerated and his offense did not involve weapons or violence. He also claims that his criminal conduct was the product of a drug addiction. The government maintains that Schultz poses a danger to the community given his criminal conduct in soliciting, grooming, and arranging to meet a minor for sex. This Court agrees with the government.

Schultz's conduct with the individual whom he understood to be a 15-year-old girl and his actions in attempting to see his plans through to fruition demonstrate that he poses a significant danger to the community. Schultz had every intention to molest and assault this "girl" and strived to do so by luring her out of her parents' protection. Had the individual Schultz thought he was communicating with been an actual minor instead of an undercover law enforcement officer, this episode would have ended much differently. And this is not Schultz's first offense. Of note, Schultz pleaded guilty in 2001 to attempted sexual misconduct after being charged with rape in the third degree stemming from an incident in which he engaged in non-consensual sex with a female victim. (Presentence Report, ¶ 49.)

Consequently, given the manipulative and predatory nature of Schultz's criminal conduct and his history of sexual misconduct, this Court finds that he presents a danger to the community if released. A sentence reduction is therefore precluded on this basis as well. See United States v. Lebrecht, 1:16-CR-166 EAW, 2020 WL 2519721, at *3 (W.D.N.Y. May 18, 2020) (denying compassionate release to a child pornography

defendant housed at FCI Elkton due, in part, to the danger the defendant poses to the community as demonstrated by his on-line chats and other underlying offense conduct).

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A) is not warranted. Schultz's motion will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Schultz's Motion for Sentence Reduction (Docket No. 45) is DENIED.

SO ORDERED.

Dated:    May 28, 2020
          Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge
